**Valerie K. JACKSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 35A04–9008–CR–368.**

Court of Appeals of Indiana, Fourth District.

May 15, 1991.

David A. Feeback, Edris Brown Johnson & Feeback, Bluffton, for appellant.

Linley E. Pearson, Atty. Gen., David M. Sommers, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CHEZEM, Judge.

*Case Summary*

Defendant–Appellant, Valerie K. Jackson, appeals her conviction by jury of Intimidation (class A misdemeanor). We reverse.

*Issue*

Defendant presents (1) issue for our review, which we restate as follows:

Whether the Defendant communicated a "threat" which would support her conviction for Intimidation.

### Facts and Procedural History

On December 14, 1988, Defendant placed a telephone call to Judge Robert S. Anderson of the Adams' Circuit Court. She did not identify herself, but told the judge that she was "relay[ing] a message" from Dean Samaniego (a person the judge had sentenced to prison for 108 years following convictions for Burglary, Attempted Criminal Deviate Conduct, and for being an Habitual Offender). The gist of the message was that Dean would dismiss the civil action he had brought against the judge (for violation of his constitutional rights during his criminal trial) *if* the judge would dismiss the charges and release Dean from prison.

Defendant tape recorded the telephone conversation she had with Judge Anderson. At trial, the recording was introduced into evidence, and it revealed the following conversation:

MS. FUELLING: Circuit Court, Becky speaking.

DEFENDANT: May I leave a message for Judge Anderson please?

MS. FUELLING: He is here if you would like to speak with him.

DEFENDANT: Thank you.

MS. FUELLING: Can I tell him who is calling please?

DEFENDANT: Uh, no. I'm sorry.

MS. FUELLING: Oh, okay.

JUDGE: Hello. This is Bob Anderson.

DEFENDANT: Hello, Judge Anderson. I'm calling for Dean Samaniego.

JUDGE: Uh-huh.

DEFENDANT: And I spoke to him recently and he asked me to just relay a message to you so that's all I'm trying to do here.

JUDGE: All right.

DEFENDANT: He asked me to give you the message that if you would be willing to dismiss charges and arrange his release, that he also would dismiss charges after thirty days. And after that then he would expect sixty (60) days in order to leave the state. And that's all I've been asked to do is just to relay the message.

JUDGE: Okay. Just a minute. I want to make sure I got this straight. Okay?

DEFENDANT: Okay.

JUDGE: In other words, you're calling for Dean Samaniego—you're calling for Dean Dean [sic] Samaniego. Is that right?

DEFENDANT: Mm-hum.

JUDGE: In other words, if I would dismiss the charges, now what do you mean by that? Dismiss the charges within thirty days. What do you mean by that? What charges are you talking about?

DEFENDANT: Uh, sir, I'm afraid you'll have to talk to him about that.

JUDGE: Do you mean his criminal charges?

DEFENDANT: Yes.

JUDGE: If I dismiss the criminal charges then he would dismiss the case against me.

DEFENDANT: Right.

JUDGE: Well, you know I can't do that, don't you? He's been convicted of a crime by the State of Indiana and I'm—uh—took an oath to obey the law, not to violate the law. This is just blackmail. You know that.

DEFENDANT: Do you have his address, sir?

JUDGE: I have his address, sure. But (unintelligible) blackmail. You know that.

DEFENDANT: Okay. Thank you.

JUDGE: Thank you. Bye.

After the conversation ended, the judge contacted the prosecutor and told him that he had just received a threatening telephone call. The prosecutor then had the police investigate the incident. Several days later, the judge told a police detective that he believed the call was made by the Defendant. Apparently, Defendant often helped Dean prepare and file pleadings in the judge's court, and the pleadings were sent to the court in envelopes bearing the name and return address of Defendant.

The detective then obtained the telephone records of Defendant, as well as the visitors' records for Dean from the prison at Michigan City, Indiana. The records showed that Defendant had met with Dean shortly before the telephone call in question, and that a call had been placed from Defendant's home to the Adams Circuit Court at 9:30 a.m. on December 14, 1988.

The detective then went to the residence of Defendant. He stated that "[h]e was investigating a criminal matter and [he] needed to get her side of the story." Defendant then admitted that she called the judge to relay a message for Dean.

On February 15, 1989, the Adams County Prosecutor's Office filed an Information, which charged Defendant with Intimidation. The case was venued to another county, where a jury returned a guilty verdict at the conclusion of trial.

### Discussion and Decision

■ Defendant argues that "[her] conviction for [I]ntimidation must be reversed because the [S]tate has failed to prove that [her] telephone call to Judge Anderson communicated a 'threat' as that term is defined by I.C. 35–45–2–1(c)(4)." We agree.

We first note that a court reviewing the sufficiency of the evidence will neither reweigh the evidence nor judge the credibility of witnesses. We consider only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom, and if there is evidence of probative value to support the verdict, it will not be disturbed. *Peate v. State* (1990), Ind., 554 N.E.2d 825, 827; *McInchak v. State* (1990), Ind.App., 560 N.E.2d 546, 548.

The crime of "Intimidation" is set forth in I.C. 35–45–2–1. The pertinent portions of the statute are as follows:

(a) A person who communicates a threat to another person, with the intent that:

(1) the other person engage in conduct against his will;

\* \* \* \* \* \*

commits intimidation, a Class A misdemeanor.

Therefore, there must be a "threat" before one may be convicted of Intimidation. In the statute, the Legislature defined "threat" as follows:

(c) "Threat" means an expression, by words or action, of an intention to:

(1) unlawfully injure the person threatened or another person, or damage property;

(2) unlawfully subject a person to physical confinement or restraint;

(3) commit a crime;

(4) unlawfully· withhold official action, or cause such withholding;

(5) unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees or expenses;

(6) expose the person threatened to hatred, contempt, disgrace, or ridicule; or

(7) falsely harm the credit or business reputation of the person threatened.

The State argues that a "threat" occurred in this case when Defendant told the judge that Dean would dismiss his civil action in exchange for being released from prison. State relies upon the definition of "threat" set forth in I.C. 35–45–2–1(c)(4), and argues that Defendant sought to cause the unlawful withholding of official action by conveying a settlement offer which would result in Dean's early release from prison. The pertinent portion of the Information upon which Defendant was tried and convicted states as follows:

[O]n or about December 14, 1988, Valerie K. Jackson did communicate to Judge Robert S. Anderson a threat to-wit: an expression of intention to unlawfully cause the withholding of official action, with the intent that Judge Robert S. Anderson engage in conduct against his will, to-wit: releasing Horse Dean Samaniego from prison.

■ We disagree with State. The record reveals that throughout this case the State has misconstrued the scope of I.C. 35–45–2–1(c)(4). We note here that "[i]t is our

duty to construe criminal statutes strictly against the State and in favor of the accused." *Hutcherson v. State* (1978), 178 Ind.App. 8, 382 N.E.2d 983, *trans. denied.* The law is well-established that criminal statutes must be strictly construed against the State, may not be enlarged beyond the fair meaning of the language used, and may not be held to include offenses other than those clearly defined. *Bond v. State* (1987), Ind., 515 N.E.2d 856, 858; *Sheppard v. State* (1985), Ind.App., 484 N.E.2d 984, 988, *reh. denied, trans. denied.*

Subsection (c)(4) applies in situations where a person either threatens to unlawfully withhold official action, or threatens to unlawfully cause the withholding of official action. For example, the subsection would apply where an official tells someone, "If you don't give me $5,000, I'll make sure that we don't consider your request anytime soon." That would clearly be a "threat" within the scope of I.C. 35–45–2–1(c)(4).

But in this case there is *no* evidence of a "threat," as that term is defined in subsection (c)(4). Defendant did not threaten to cause the unlawful withholding of official action. She was not even in a position to take, or to cause the withholding of, any official action. Indeed, if there was a "threat" in this case, it was that Dean would continue to prosecute his civil action if his settlement offer was not accepted by Judge Anderson. So the "threat" was the intention to prosecute the civil action, not to cause the unlawful withholding of official action. At most, Defendant was requesting that the judge *take* official action by releasing Dean from prison, and that is not a "threat" within I.C. 35–45–2–1.

Reversed.

SHARPNACK, J., concurs.

CONOVER, J., concurring in result with separate opinion.

CONOVER, Judge, concurring in result.

I reluctantly concur in the majority opinion because Jackson did not threaten Judge Anderson. I wish to point out, however,

Jackson was charged with the wrong crime.

This matter should have been prosecuted as an attempted bribery, a class C felony, under IND.CODE 35–44–1–1. A "bribe" is any gift, advantage, beneficial promise, valuable thing, or emolument offered to any public officer to influence his behavior in office. *Vehling v. State* (1935), 210 Ind. 17, 196 N.E. 107; *Williams v. State* (1919), 188 Ind. 283, 123 N.E. 209. Unquestionably, the offer to dismiss a civil action against the judge constituted the making of a *quid pro quo* beneficial promise or granting of advantage designed to influence Judge Anderson's behavior in office. Attempted bribery or conspiracy to commit that offense, rather than intimidation was the proper charge.

For these reasons, I concur in the result reached by the majority.