Duane N. GADDIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9611–CR–727.

Court of Appeals of Indiana.

May 27, 1997.

J. Richard Kiefer, Kiefer & McGoff, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Duane N. Gaddis appeals from his conviction for Intimidation, as a Class A misdemeanor, following a bench trial. Gaddis was ordered to serve a 15–day sentence, which was suspended, he was placed on six months probation, and ordered to pay a fine and court costs. The dispositive issue presented for our review is whether Gaddis communicated a threat within the meaning of the intimidation statute.

We reverse.[1]

### FACTS

On August 15, 1995, Donald Carver and his son were driving southbound in the far left lane of Interstate 465 near the Indianapolis International Airport. Carver observed a car driven by Gaddis approach his rear bumper and felt that the Gaddis vehicle was following him too closely. Traffic was heavy during the late afternoon rush hour, and Carver was unable to switch lanes. When the traffic cleared, Gaddis moved across to the far right lane. Carver then moved to the middle lane, placing his car near the Gaddis vehicle. Until this point, the parties had made no attempt to communicate.

When the vehicles were beside one another, the men exchanged hand gestures and

---

1. We heard oral argument on April 15, 1997, at St. Mary-of-the-Woods College.

spoke toward each other. The hand gestures were incomprehensible.[2] The windows in both vehicles were raised and neither could hear what the other was saying. During this encounter Gaddis removed his handgun from the glove box, displayed it by the window at a 45–degree angle, and placed it near the console. Carver then slowed down and backed off. Gaddis exited from Interstate 465 to State Road 67, and Carver pulled over to call the police on his cellular telephone.

■ Indiana State Police Trooper Kimberly K. McNeeley was "dispatched to take a criminal recklessness report" from Carver. After speaking with Carver and his son, Trooper McNeeley went to the Gaddis home to investigate. Gaddis was informed of his rights and described the encounter with Carver. Gaddis admitted that he did have a handgun and that he had taken it from the glove box and laid it by the console, but he denied having openly displayed the gun. Gaddis had a gun permit and produced the weapon for Trooper McNeeley's inspection.

The police subsequently tendered a charge of criminal recklessness to the prosecutor. Instead the State charged Gaddis with intimidation. The information alleged that Gaddis:

... did communicate to Donald Carver a threat, that is: an expression by words or actions, of an intent to harm Donald Carver, with the intent that Donald Carver be placed in fear of retaliation for a prior lawful act, that is: for Donald Carver having occupied a high speed lane of traffic on Interstate 465 at eight (8) mile marker;

...

Gaddis was convicted and now appeals.

## DISCUSSION AND DECISION

Gaddis contends that the mere display of a handgun does not communicate a threat

within the meaning of the intimidation statute. We must agree.

Intimidation is defined by Indiana Code § 35–45–2–1, which states in relevant part:

(a) A person who communicates a threat to another person, with the intent that:

(1) the other person engage in conduct against his will; or

(2) the other person be placed in fear of retaliation for a prior lawful act; commits intimidation, a Class A misdemeanor.

IND.CODE § 35–45–2–1(a)(1)(2). The State relies on the definition of "threat" as "an expression, by words or action, of an intention to ... unlawfully injure the person threatened," set forth in Indiana Code § 35–45–2–1(c)(1).

Here, the State had to prove that (1) Gaddis communicated through his actions an intention to unlawfully injure Carver, (2) with the intent that Carver be placed in fear of retaliation, (3) for Carver's prior lawful act. Thus, there must be a threat before one may be convicted of intimidation. *Jackson v. State,* 570 N.E.2d 1344, 1346 (Ind.Ct.App. 1991), *trans. denied.* The State contends that such a "threat" occurred when Gaddis displayed his handgun to Carver as their vehicles traveled side-by-side on the interstate. We cannot agree.

The State has misconstrued the meaning of "threat" as defined by our legislature under the intimidation statute and as a matter of law has failed to demonstrate that Gaddis threatened Carver.[3] A threat requires that the defendant express an intention to unlawfully injure the person threatened. IND.CODE § 35–45–2–1(c)(1). Here, the parties at-

2. Carver testified that, "we kind of hand jockeyed back and forth." He surmised that the gestures from Gaddis meant Gaddis was upset because earlier Carver had not moved out of the far left lane so that Gaddis could pass him. Gaddis testified that he was apprehensive because the Carver vehicle had no license plate, and he was carrying several thousand dollars in jewelry and cash. Gaddis speculated that the gestures from Carver meant Carver was trying to force him to pull over or to run him off the road.

3. In addition to failing to prove that Gaddis communicated a threat, the State has failed to prove that Gaddis intended to place Carver in fear of retaliation for a prior lawful act. The evidence is undisputed that Gaddis had withdrawn his vehicle from behind the Carver vehicle and had moved his vehicle two lanes over into the far right hand lane. It was only after the Carver vehicle had moved into the middle lane and the vehicles were traveling side-by-side, and after the parties had exchanged gestures and had

tempted but failed to communicate through words or gestures. The facts show only that Gaddis raised his handgun to the window at a forty-five degree angle for Carver to view. Although Carver was shown the profile of the handgun for a few seconds, the weapon was not pointed at him or his vehicle.[4]

The law is well-established that criminal statutes must be strictly construed against the State, may not be enlarged beyond the fair meaning of the language used, and may not be held to include offenses other than those clearly defined. *Jackson*, 570 N.E.2d at 1347. Any ambiguity must be resolved against imposing the penalty, and only those cases which are clearly within its meaning and intention can be brought within the statute. *Ajabu v. State*, 677 N.E.2d 1035, 1042 (Ind.Ct.App.1997), *trans. denied.* Carver may have been frightened by the encounter, but he was not threatened within the meaning of the intimidation statute as there was no evidence of an intent to injure. Carver himself told the trial court that, "I don't think he [Gaddis] had any intent, I mean, of ever shooting ... cause I don't believe he pointed it directly at us." Record at 49.

Our opinion is guided by an additional consideration. Statutes enacted by our legislature are presumed to be constitutional and, where possible, must be so construed. *State v. Virtue*, 658 N.E.2d 605, 609 (Ind.Ct.App.1995), *trans. denied.* In Indiana, there is a general right to bear arms rooted in Article 1, Section 32, of the Indiana Constitution, which includes the substantive right to carry a handgun with a license, provided that the provisions of the Indiana Firearms Act are met. *Kellogg v. City of Gary*, 562 N.E.2d 685, 704 (Ind.1990). Our supreme court has recognized that this right to bear arms, which includes the right to carry a handgun with a license, is both a liberty and property interest protected by the due process clause of the Fourteenth Amendment, for the defense of one's self and property. *Id.* at 694, 696. Thus, the intimidation statute should not be construed to

criminalize the mere display of a weapon when the person charged has a constitutional right to carry it. We conclude that the display of a properly licensed firearm which Gaddis was entitled to carry did not, in itself, constitute a threat under the intimidation statute.

We do not condone the flashing of a weapon on our public roads. Confrontations between angry motorists threaten public peace and safety. The display of a firearm to another motorist while traveling in close proximity at a high rate of speed is foolish, but it is not in itself unlawful under the statute. We hold that under the intimidation statute the mere display of a handgun does not express an intention to unlawfully injure a person or his property. Because the State has failed to show that such a threat occurred, Gaddis' conviction for intimidation must be reversed.

Reversed.

BAKER and FRIEDLANDER, JJ., concur.

---

attempted to speak to each other from behind closed windows, that Gaddis showed his handgun. It was during this confrontation that Gaddis showed his weapon to Carver, who then slowed down, backed off and pulled in behind his vehicle. Both parties testified that they could

not hear or understand any words or gestures exchanged.

4. Gaddis was not charged with Pointing a Firearm at Another Person, a Class D felony. IND. CODE § 35–47–4–3.