**Jaron Q. JOHNSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–9906–CR–225.**

Court of Appeals of Indiana.

March 31, 2000.

---

Richard Leo McCormick, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. Ind.Code § 35–45–2–1.

## OPINION

MATTINGLY, Judge

Jaron Q. Johnson appeals his conviction after a bench trial of intimidation as a Class A misdemeanor.[1] The only issue he submits for our review is whether the evidence presented at trial was sufficient to support the judgment.

We reverse and vacate the conviction.

### FACTS AND PROCEDURAL HISTORY

On November 5, 1998, an out-of-uniform Sgt. Jerome D. Kreczmer of the South Bend Police Department was driving an unmarked car on Dragoon Trail in St. Joseph County. Kreczmer stopped for a traffic light at the intersection of U.S. 331 and Dragoon Trail directly behind a gray Ford Tempo. While both vehicles waited for the light, Johnson, a backseat passenger in the Tempo, got out of the Tempo on the passenger's side, walked behind the car, and approached a man at the intersection who was holding a sign that read "Will Work for Food." Johnson greeted the man and gave him some money. At this time, Johnson was standing about ten feet in front of and to the left of Kreczmer's unmarked car.

When the light turned green, Johnson was still outside the Tempo conversing with the man he had just greeted. Kreczmer rolled down his window and told Johnson the light was green and that he wanted to go. Johnson politely responded, "Fuck you." (R. at 30.) Again, Kreczmer told Johnson the light was green, the Tempo was obstructing traffic, and Kreczmer wanted to go. To this, Johnson suggested Kreczmer could "Suck [his] dick." (R. at 30.)

Upset by Johnson's remarks, Kreczmer began to get out of his vehicle. Johnson, at this point returning to the Tempo, was between the two vehicles. Noticing Kreczmer starting to get out of his car, Johnson lifted his jacket to reveal the top of an

automatic handgun. He stated to Kreczmer "Don't even think it." (R. at 31.) Kreczmer testified he understood Johnson's statement to mean "[Johnson] was telling me not to get out of the car, that he had a handgun." (R. at 31.) Kreczmer decided not to get out of his car.

Once Johnson was back in the Tempo, it continued through the still green light. Kreczmer called police dispatch with a description of the Tempo, a description of its occupants, and an explanation of what happened. Shortly thereafter, Mishawaka Police pulled the Tempo over and arrested Johnson for intimidation. Upon searching Johnson, the officers found a loaded Jennings 9mm automatic handgun along with bullets, two clips, and a holster. Johnson carried a valid permit for the handgun.

### DISCUSSION AND DECISION

■■ We begin by reciting our now familiar standard when reviewing the sufficiency of evidence needed to support a criminal conviction. For such claims, we neither reweigh the evidence nor judge the credibility of witnesses. *Perry v. State*, 638 N.E.2d 1236, 1242 (Ind.1994); *Byrd v. State*, 707 N.E.2d 308, 312 (Ind.Ct.App. 1999). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Taylor v. State*, 681 N.E.2d 1105, 1110 (Ind.1997); *Chissell v. State*, 705 N.E.2d 501, 505 (Ind.Ct.App.1999). We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Taylor*, 681 N.E.2d at 1110. This court is duty bound to sift and probe the evidence to determine whether the evidence is sufficient to prove each and every element of the crime and to determine whether the inferences made are reasonable. *Holmes v. State*, 583 N.E.2d 180, 183 (Ind.Ct.App.1991) (quoting *Liston v. State*, 252 Ind. 502, 511–12, 250 N.E.2d 739, 743–44 (1969)).

Johnson was charged with intimidation as a Class A misdemeanor. The charging information read:

> On or about the 5th day of November, 1998, in St. Joseph County Indiana, JARON Q. JOHNSON did communicate to Jerome D. Kreczmer an expression of intention to unlawfully injure Jerome D. Kreczmer, with the intent that said Jerome D. Kreczmer be placed in fear of retaliation for a prior lawful act, to-wit: after Jerome D. Kreczmer asked him to move.

(R. at 3.) This information tracks the language of the intimidation statute that reads in relevant part:

> (a) A person who communicates a threat to another person, with the intent that:
>
> . . . .
>
> (2) the other person be placed in fear of retaliation for a prior lawful act; commits intimidation, a Class A misdemeanor.

Ind.Code § 35–45–2–1. The statute goes on to define "threat" as "an expression, by words or actions, of an intention to: (1) unlawfully injure the person threatened or another person." *Id.* § 35–45–2–1(c).

■■ For its part, the State was required to prove beyond a reasonable doubt (1) Johnson communicated a threat to Kreczmer, (2) with the intent that Kreczmer be placed in fear of retaliation, (3) for Kreczmer's prior lawful act. The State argues Johnson's act of revealing his possession of a handgun sufficiently communicated a threat and demonstrated the intent to place Kreczmer in fear of retaliation for a previous lawful act. We disagree.

[6] Consistent with our holding in *Gaddis v. State*, 680 N.E.2d 860 (Ind.Ct. App.1997), we find Johnson did not communicate a "threat" within the meaning of the intimidation statute by merely showing Kreczmer he was in possession of a handgun. *Gaddis* involved an encounter between two motorists on I–465 during late afternoon rush hour traffic. Gaddis and the other motorist, each apparently trou-

bled by the other's driving, pulled beside one another, exchanged hand gestures, and spoke toward each other through closed windows. The encounter ended when "Gaddis removed his handgun from the glove box, displayed it by the window at a 45–degree angle, and placed it near the console." *Id.* at 861.

Gaddis was subsequently charged with and convicted of intimidation for communicating a threat (by displaying the handgun) with the intent to retaliate for the other motorist's lawful act of driving. Reversing, we held the "display of a properly licensed firearm ... did not, in itself, constitute a threat under the intimidation statute." *Id.* at 862. The statute "should not be construed to criminalize the mere display of a weapon when the person charged has a constitutional right to carry it." *Id.*

Though the mere display of a properly licensed firearm does not in itself constitute a threat for purposes of the intimidation statute, the trier of fact must also consider the context of the display. In *Gaddis*, we found gesturing with a handgun by an angered motorist while driving was insufficient to constitute a threat to a driver in a nearby car. Here, Johnson lifted his jacket to reveal a side-arm while simultaneously cautioning Kreczmer not to get out of his car. Johnson did not gesture with his handgun nor did he even hold it; he merely showed Kreczmer the fact he was so accoutered. Even in the context of Johnson's vague remark, "Don't even think it," the evidence is not sufficient to satisfy the "threat" element of intimidation.[2] The facts of this case are sufficiently similar to those in *Gaddis* to prevent us from deviating from our previously stated position.[3]

## CONCLUSION

While we continue to find the mere display of a handgun insufficient to constitute a threat as defined by Ind.Code § 35–45–2–1, we are troubled by the barbaric nature of such posturing on the part of Johnson. By revealing his weapon to Kreczmer and suggesting his willingness to use it as needed, Johnson engaged in a brinkmanship style of street diplomacy that can only escalate to actual violence. His actions were both foolish and dangerous, but not illegal under the statute.

Reversed.

BAILEY, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, *dissenting.*

I respectfully dissent.

In *Gaddis v. State*, 680 N.E.2d 860, 862 (Ind.Ct.App. 1997), this court held that "the mere display of a handgun does not express an intention to unlawfully injure a person or his property." Here, unlike the situation in *Gaddis*, we have more than a "mere display." We have the defendant who has already uttered what may be charitably described as "fighting words" show an automatic handgun and say, "Don't even think it." Police Sergeant Kreczmer, the person to whom the gun was displayed and the comment directed, believed that the defendant was telling him "not to get out of the car, that he had a handgun." (R. at 31.)

The trial judge and finder of fact concluded, "There was clear intimidation in this Court's mind." I agree. The majori-

---

**2.** Johnson argues his acts did not constitute a threat under the statute as they were self-defensive and therefore not the intention to "unlawfully injure." He claims his actions were "an expression of an intent to defend himself and *lawfully* injure Kreczmer." (Br. of Appellant–Defendant at 7, emphasis in original.) He concludes by urging this court to require that the State "disprove self-defense as an element of the crime of Intimi-

dation." (*Id.*) We refrain from commenting on the term "unlawfully" as used in Ind.Code § 35–45–2–1(c) as its interpretation is not necessary to the resolution of this case.

**3.** While *Gaddis* is clearly on point, the State does not attempt to distinguish the facts of this case from it.

ty concludes that the defendant's "vague remark" is insufficient to constitute a threat under the intimidation statute. In the *Dirty Harry* movies, Clint Eastwood's famous "Go on . . . make my day" line was equally vague, but neither the derelicts invited to make Harry's day in the movie, nor the millions of movie goers who viewed it, had any doubt as to whether Harry was communicating a threat. So too, here.

I would affirm the trial court in all respects.