Jaron Q. JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71S03–0009–CR–529.

Supreme Court of Indiana.

March 9, 2001.

Sean P. Hilgendorf, Hilgendorf & Hilgendorf, South Bend, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Andrew L. Hedges, Deputy Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION TO TRANSFER**

RUCKER, Justice

When a person utters what can only charitably be called fighting words, then displays a handgun, and next says "don't even think it," we conclude the person has communicated a threat within the meaning of the intimidation statute. We therefore grant transfer and affirm the trial court.

*Facts*

On the afternoon of November 5, 1998, Sergeant Jerome Kreczmer of the South Bend Police Department stopped directly behind a gray Ford Tempo at a red traffic light in St. Joseph County, Indiana. Although Kreczmer was on duty, he was out-of-uniform and driving an unmarked car. While the traffic light was still red, Jaron Q. Johnson exited the Tempo and approached a man holding a sign that read "Will Work for Food." Johnson greeted the man and gave him money. When the traffic light turned green, Johnson was still outside the Tempo talking with the

man holding the sign. Kreczmer rolled down his window and told Johnson that the traffic light was green and that he wanted to go. Johnson responded, "F*** you." R. at 30. Again, Kreczmer told Johnson that the traffic light was green, that the Tempo was obstructing traffic, and that he wanted to go. This time Johnson replied, "Suck my d***." R. at 30. When Kreczmer started to exit his car, Johnson lifted his jacket revealing the top of an automatic handgun and stated, "Don't even think it." R. at 31. Apparently recognizing that discretion was the better part of valor, Kreczmer wisely remained in his vehicle. Johnson then got into the Tempo and drove away. Kreczmer immediately called police dispatch. Shortly thereafter, officers of the Mishawaka Police Department pulled the Tempo over and arrested Johnson. In his possession, officers found a loaded 9 mm automatic handgun along with two clips and a holster. He also possessed a valid handgun permit.

Johnson was charged with intimidation as a Class A misdemeanor. After a bench trial he was convicted as charged. The trial court sentenced Johnson to 180 days imprisonment with 160 days suspended. Citing *Gaddis v. State*, 680 N.E.2d 860 (Ind.Ct.App.1997), as dispositive controlling authority, the Court of Appeals reversed in a two to one decision finding the evidence insufficient to sustain the conviction. *Johnson v. State*, 725 N.E.2d 984 (Ind.Ct.App.2000) (Kirsch, J., dissenting).[1] We grant transfer and affirm the judgment of the trial court.

### Discussion

■ *Gaddis* involved an encounter between two motorists on I–465 in Indianapolis during rush hour. Gaddis and the other motorist, each apparently troubled by the other's driving, pulled beside one another, exchanged hand gestures, and spoke to each other through closed windows. Gaddis then "removed his handgun from the glove box, displayed it by the window at a 45–degree angle, and placed it near the console." *Gaddis*, 680 N.E.2d at 861. Gaddis was subsequently convicted of intimidation. On review, the Court of Appeals vacated the conviction, holding "the mere display of a handgun does not express an intention to unlawfully injure a person or his property." *Id.* at 862. We agree with this general proposition. However, the State did not seek transfer in *Gaddis*, and accordingly, this Court had no opportunity to evaluate whether the facts in that case demonstrated that the defendant went beyond the "mere display" of a handgun. In any event, we observe that introducing a handgun into an emotionally charged environment can easily lead to a physical confrontation with tragic consequences. Indeed, as the Court of Appeals' majority observed in this case, "By revealing his weapon to Kreczmer and suggesting his willingness to use it as needed, Johnson engaged in a brinkmanship style of street diplomacy that can only escalate to actual violence. His actions were both foolish and dangerous...." *Johnson*, 725 N.E.2d at 987. We agree. *See also* P.J. Cook, *The Role of Firearms in Violent Crime, in Criminal Violence* 236–91 (M.E. Wolfgang & N.A. Werner eds., 1982) (commenting that a large number of murders may arise from unintentional fits of rage that are quickly regretted). Thus, where as here the record shows the existence of words or conduct that are reasonably likely to incite confrontation, coupled with the display of a firearm, we are hard pressed to say that such facts are insufficient to prove that a threat has been communicat-

---

1. In his dissenting opinion Judge Kirsch observed:

   The majority concludes that the defendant's "vague remark" is insufficient to constitute a threat under the intimidation statute. In the *Dirty Harry* movies, Clint Eastwood's famous "Go on ... make my day" line was

   equally vague, but neither the derelicts invited to make Harry's day in the movie, nor the millions of movie goers who viewed it, had any doubt as to whether Harry was communicating a threat. So too, here.

   *Johnson*, 725 N.E.2d at 987–88. We agree with Judge Kirsch.

ed within the meaning of the intimidation statute.

 When reviewing a claim of insufficient evidence, we consider only the evidence that supports the verdict and draw all reasonable inferences therefrom. *Warren v. State,* 725 N.E.2d 828, 834 (Ind. 2000). We do not reweigh the evidence or judge the credibility of witnesses. *Id.* We uphold a conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

To support a conviction for intimidation in this case, the State was required to show that the defendant: (1) communicated a threat; (2) to another person; (3) with the intent that the other person be placed in fear of retaliation for a prior lawful act. Ind.Code § 35–45–2–1; *McIntire v. State,* 717 N.E.2d 96, 99 (Ind.1999). A "threat" is defined as an "expression, by words or action, of an intention to ... unlawfully injure the person threatened...." I.C. § 35–45–2–1(c)(1).

In this case, evidence that Johnson displayed a firearm combined with telling Kreczmer "don't even think it," which was preceded by two obscene remarks, was sufficient for a trier of fact to conclude that Johnson communicated a threat within the meaning of the intimidation statute, namely: Johnson expressed by his words and actions an intention to unlawfully injure Kreczmer. The evidence was also sufficient to show that Johnson threatened Kreczmer with the intent to place him in fear of retaliation for a prior lawful act, namely: asking Johnson to move the car.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.