**Brandon HOLMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0401–CR–41.**

Court of Appeals of Indiana.

Oct. 14, 2004.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Brandon Holman appeals his conviction for residential entry. Based on the totality of the circumstances, we conclude that the seventeen-year-old minor in this case did not have the authority to give consent to her boyfriend to enter the house in which she lived with her parents. Furthermore, Holman's belief that the minor had the authority to give consent was not reasonable. We affirm his conviction.

### Facts and Procedural History

In the summer of 2003, Erica Marcadl, who was seventeen years old, lived with her parents, Eric and Aracelis Marcadl (collectively, "the Marcadls"), in Indianapolis. Erica was dating Holman, who, at the time, was evading authorities for violating the conditions of his home detention;

her parents disapproved of their relationship. Beginning in July, Holman—at Erica's request—started coming to the Marcadl residence around 2:00 a.m. a couple of times a week and sat outside Erica's bedroom window so the two of them could talk. On two occasions, Holman entered the Marcadl residence. On one occasion, Holman entered the house through the front door because the Marcadls were gone. On the other occasion, Holman entered the house through Erica's bedroom window because the Marcadls were home. The Marcadls were not aware that Holman had ever entered their house, and Erica never asked her parents for permission for Holman to come over to their house because she already knew that the answer would be no. Additionally, Holman was "reluctant" even to come over to the Marcadl residence because he "knew ... where [Erica's] parents stood as far as me period and them knowing my situation [with evading authorities because of the home detention violation]." Tr. p. 27.

Around 10:00 p.m. on August 16, Holman called Erica on her cell phone and told her that he needed some of his clothes, which Erica kept in her bedroom. Because Erica was not home at the time but her parents were, she told Holman to "be quiet," "hurry up," "get [the] clothes," and "get out" of the house. *Id.* at 21–22. Erica also told Holman "don't be seen" and instructed him that if the outside sensor light at her house came on, "leave[;] don't get [the] clothes." *Id.* at 22.

Later that same night, Mr. Marcadl was watching television when he saw the outside sensor light come on.[1] Mr. Marcadl then stepped outside the front door and observed Holman, who was in the process

---

1. At trial, Holman denied actually entering Erica's bedroom window but acknowledged that he set off the outside sensor light.

of backing out of Erica's bedroom window, with "[m]ore than half of his body [still] inside the window." *Id.* at 8. When Holman exited the window, he did not have any clothes in his possession. After a brief conversation with Holman, Mr. Marcadl went inside and called the police. By the time the police arrived, Holman was gone.

The State subsequently charged Holman with Residential Entry as a Class D felony,[2] and a bench trial ensued. During closing argument, defense counsel argued that minors have the authority to give consent to another person to enter the house in which they live. The trial court disagreed—finding that only the Marcadls had the authority to consent to an entry into their house—and found Holman guilty as charged. Holman now appeals.

### Discussion and Decision

■ Holman contends that the evidence is insufficient to support his conviction for residential entry because he had consent to enter the Marcadl residence. When examining the sufficiency of the evidence, we neither reweigh the evidence nor resolve questions of credibility. *Johnson v. State,* 743 N.E.2d 755, 757 (Ind. 2001). Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn from that evidence. *Id.* We affirm if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ To convict Holman of residential entry, the State must have proved that he knowingly or intentionally broke and entered the Marcadl residence. Ind.Code § 35–43–2–1.5. Holman does not contest that he knowingly or intentionally broke and entered the Marcadl residence; rath-

er, Holman asserts that he had consent from Erica to do so. Lack of consent is not an element of residential entry. *Griesinger v. State,* 699 N.E.2d 279, 282 (Ind.Ct. App.1998), *trans. denied.* Instead, the defendant has the burden of raising consent as a defense. *Id.* Once the defense is raised, the State has the burden of disproving the defense beyond a reasonable doubt. *Id.* A defendant's belief that he has permission to enter must be reasonable in order for him to avail himself of the defense of consent. *McKinney v. State,* 653 N.E.2d 115, 118 (Ind.Ct.App.1995).

Here, the State presented evidence that Erica knew that her parents disapproved of her relationship with Holman and did not want him to come over to their house. Although the Marcadls had not directly told Holman not to come over to their house, Holman, presumably through Erica, knew where they stood on this issue. This is borne out by the fact that for the vast majority of his visits to the Marcadl residence, Holman came in the middle of the night, sat outside Erica's bedroom window, and did not enter the house. Accordingly, Holman did not have consent from the Marcadls to enter their house on the night of August 16, 2003.

The question remains, however, whether Erica had the authority to consent to Holman's entry. The State does not address this issue in its appellate brief; rather, the State only addresses whether Holman had the Marcadls' consent. Holman, on the other hand, argues that Erica, a minor, had the authority to give consent, but he provides no authority in support of his argument. Our research reveals no Indiana case that addresses the precise issue of whether minors have the authority to give consent to another person to enter the house in which they live. Therefore,

2.  Ind.Code § 35–43–2–1.5.

we look to other jurisdictions for guidance in answering this question.

The Wisconsin Supreme Court has held that a minor may "reasonably possess the authority to consent to a search, or to consent to police entry of a parent's home." *Wisconsin v. Tomlinson*, 254 Wis.2d 502, 648 N.W.2d 367, 376 (2002). The court explained that whether a minor possesses the authority to consent to a search depends on a number of factors, and courts must look to the totality of the circumstances to make such a determination. *Id.* The primary factors are the age, intelligence, and maturity of the minor and the scope of the search to which the child consents. *Id.*

The Georgia Court of Appeals has likewise held that whether a minor has the authority to consent to a search is to be determined on a case-by-case basis and depends on a number of factors. *Atkins v. Georgia*, 173 Ga.App. 9, 325 S.E.2d 388, 390 (1984), *aff'd by* 254 Ga. 641, 331 S.E.2d 597 (1985). The court articulated the following factors: whether the minor lives on the premises, the minor's right of access to the premises, whether the minor had the right to invite others thereto, and whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion. *Id. See also Illinois v. Holmes*, 180 Ill.App.3d 870, 129 Ill.Dec. 955, 536 N.E.2d 1005, 1007 (1989) ("[A] minor child living at home is competent to give lawful consent to search, and age alone is never an automatic barrier to capacity to consent.").

■ We acknowledge that these cases involve whether minors have the authority to give consent to a search and not whether minors have the authority to give consent to another person to enter their house. Nevertheless, we find that the underlying principles from these cases apply. That is, age alone is not an automatic barrier to authority to consent. Instead, courts should look to the totality of the circumstances to determine whether minors have the authority to give consent to another person to enter the house in which they live, such as the age, intelligence, and maturity of the minor, the scope of the consent to enter, and whether the minor had the right to invite the person to the house.

■ The evidence shows that although Erica was seventeen years old at the time, she knew that her parents disapproved of her relationship with Holman, who was currently evading authorities, and that he was not allowed to come over to their house. And on every occasion that Erica had Holman over to her house, she did so surreptitiously without her parents' knowledge or permission. Viewing the totality of the circumstances, we conclude that Erica did not have the authority to give consent to Holman to enter the Marcadl residence. However, this does not end our inquiry because we must still determine whether Holman's belief that Erica had the authority to give him consent was reasonable.

Holman knew that he was not welcome at the Marcadl residence. For the vast majority of his visits to the Marcadl residence, Holman came in the middle of the night and sat outside Erica's bedroom window. And on the two occasions that Holman actually entered the Marcadl residence, the only time he used the front door was when the Marcadls were not home. Under these circumstances, we conclude that Holman's belief that Erica had the authority to give him consent was not reasonable. Accordingly, we affirm Holman's conviction for residential entry.

Affirmed.

RILEY, J., concurs.

CRONE, J., dissents with separate opinion.

CRONE, Judge, dissenting.

I respectfully dissent. I believe that Holman had Erica's consent to enter her bedroom for the limited purpose of retrieving his personal property. Accordingly, I would reverse his residential entry conviction.

The record reveals that seventeen-year-old Erica resided in her parents' home. In the recent past, Erica had given consent for Holman to enter her bedroom, an area over which most seventeen-year-olds exercise almost exclusive control and dominion. In fact, the couple had an understanding—when Erica's parents were home, Holman entered Erica's room through her bedroom window. Tr. at 21. On the night of the incident, Holman called Erica, and she gave him permission to enter her bedroom so that he could retrieve some of his clothes. Under the circumstances, Holman reasonably believed he had Erica's consent to enter her bedroom. *Cf. Smith v. State*, 477 N.E.2d 857, 863 (Ind.1985) (holding that consent was not defense to burglary charge where non-occupant son gave defendant permission to enter parents' home for the purpose of stealing their valuables); *Hicks v. State*, 510 N.E.2d 676, 680 (Ind.1987) (holding that burglary defendant, who claimed he was in victim's house because he mistakenly believed that victim consented to his presence as part of victim's son's alleged insurance fraud scheme, was not entitled to instruction regarding defense of mistake of fact; defendant was aware that son did not reside in victim's home, and defendant had no reasonable cause to believe that he had consent to enter home and take victim's belongings).

In this case, the person conferring the consent to enter was a resident of the home. The consent was limited to that person's area of anticipated control and privacy. The consent was for entry for a legitimate purpose, that is, retrieval of Holman's property. Eric Marcadl testified, "I met [Holman] once and this was the second time that I seen him coming out of the window." *Id.* at 11. Marcadl never told Holman, or Erica, that he could not enter the Marcadl residence. Marcadl's major objection to Holmes was that he was dating his daughter. I believe it is reasonable to assume that a seventeen-year-old has authority to consent to entry, for an otherwise legitimate purpose, to an area of her residence over which she maintains privacy and control.

In sum, I believe that Holman properly raised consent as a defense to the residential entry charge and that the State failed to disprove that defense beyond a reasonable doubt. Consequently, I would reverse his conviction.