Darnell DANIELS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–1104–CR–165.

Court of Appeals of Indiana.

Nov. 29, 2011.

Marielena Duerring, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Darnell Daniels appeals his convictions for one count of Class B felony robbery and one count of Class C felony intimidation. We affirm.

### Issues

The restated issues before us are:

I. whether there is sufficient evidence to support Daniels's robbery conviction; and

II. whether there is sufficient evidence to support his intimidation conviction.

### Facts

The evidence most favorable to the convictions is that Daniels had dated Sarah Sharp for three years, but their relationship ended in early 2010. However, after Daniels and Sharp had broken up, Sharp allowed him to stay at her apartment because he had nowhere else to live at the time. On April 26, 2010, Sharp accused Daniels of battering her, and criminal charges were filed against him.

On May 10, 2010, Sharp was returning to her apartment after running errands when Daniels approached her on the sidewalk. Daniels began yelling at Sharp, calling her names, and said that "if she didn't drop the charges, that he was going to beat her ass." Tr. p. 104. While Daniels was yelling, he twice lifted up his shirt, revealing that a handgun was tucked into the waistband of his pants. After Daniels yelled at Sharp about the battery charges, he pulled a necklace off of Sharp that she was wearing. He also forcibly took $90 in cash that Sharp had in her hand that she was going to use to pay a utility bill. Daniels then ran away, and Sharp ran after him, threatening to call the police. She did so, and when police arrived at the scene they found Sharp to be "visibly shaking and upset." *Id.* at 125.

The State charged Daniels with one count of Class B felony robbery, specifically alleging that Daniels had taken Sharp's property "by putting any person in fear" while armed with a deadly weapon. App. p. 69. The State also charged Daniels with one count of Class C felony intimidation, specifically alleging that Daniels had communicated a threat against Sharp to place her in fear of retaliation for a prior lawful act, i.e. reporting the battery, and that in committing that act he "drew a deadly weapon, to-wit: a handgun . . . ." *Id.* After a jury trial, Daniels was convicted as charged. He now appeals.

### Analysis

■ When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

### I. *Robbery*

■ We first address Daniels's claim that there is insufficient evidence to support his conviction for Class B felony robbery. The offense of robbery is committed if a defendant knowingly or intentionally takes property from another person or the presence of another person, and the defendant accomplishes the taking either by using or threatening the use of force on another person, or by putting any person in fear. Ind.Code § 35–42–5–1. The offense is a Class B felony if it is committed

while armed with a deadly weapon. *Id.* The State's charging information against Daniels specifically alleged that he accomplished the robbery by placing Sharp in fear; it did not allege that he used or threatened to use force. Generally, the State is required to prove all the material allegations in a charging information, unless a variance between the information and proof at trial is not fatal. *See Mitchem v. State,* 685 N.E.2d 671, 676 (Ind. 1997). Daniels contends there is no evidence that Sharp ever was placed in fear by Daniels's actions, as she failed to testify that she was afraid at the time of the robbery. Indeed, it appears Sharp was reluctant to testify about the incident, as she stated on the stand that she could not remember the emotions she experienced that day.

 Regardless of the lack of direct evidence that Sharp was placed in fear, there is ample precedent holding that such evidence is unnecessary. "Fear of bodily injury or personal harm in the case of noncompliance with the robber's demands is required to support a conviction requiring a person be put in fear." *Rickert v. State,* 876 N.E.2d 1139, 1141 (Ind.Ct.App. 2007). To establish the element of fear, however, it is not necessary for the victim to testify that he or she was actually put in fear. *Id.* The State need only present evidence from which the jury could infer that the victim was in fact put in fear. *Id.*

In addition, convictions for robbery by placing a victim in fear have been affirmed in situations, like this one, where the more appropriate charge arguably would have been for a forcible taking of property. For example, in *Maul v. State,* 467 N.E.2d 1197 (Ind.1984), our supreme court considered whether there was sufficient evidence to support a conviction for robbery by placing the victim in fear, where the defendant approached an elderly woman from behind and pulled her purse off of her arm, causing her arm to be sore. Our supreme court stated, "The unexpected use of force directed against the victim would be sufficient evidence from which the trier of fact could infer that the victim did experience fear." *Maul,* 467 N.E.2d at 1200. Similarly, in *Rowe v. State,* 496 N.E.2d 585 (Ind.Ct.App.1986), this court addressed a case in which the defendant was charged with robbery by fear, and not force, and there was evidence that the defendant and victim had briefly "tussled" over a sack full of cash before the defendant obtained it. We held the evidence of "tussling" was evidence that the victim had attempted to retain possession of the sack and was placed in fear during the struggle and, thus, was sufficient to support the defendant's robbery conviction. *Rowe,* 496 N.E.2d at 591.

There also are cases holding that "the use of a toy gun, or the mere appearance that the defendant was in possession of a gun will be sufficient to establish the 'violence or by putting in fear' element of robbery." *Lewis v. State,* 252 Ind. 454, 459, 250 N.E.2d 358, 361 (1969).[1] For this proposition, *Lewis* cited *Cross v. State,* 235 Ind. 611, 137 N.E.2d 32 (1956), but Daniels claims *Cross* does not support that proposition. We disagree. In *Cross,* our supreme court held there was sufficient evidence a robbery victim had been placed in fear by the acts of the defendant, where he had merely suggested to the victim that he had a gun in his pocket but had not actually displayed a gun. *Cross,* 235 Ind. at 615, 137 N.E.2d at 34.

---

1. The question of whether a toy gun could qualify as a "deadly weapon," as necessary to elevate robbery to a Class B felony, is a distinct issue from whether such a gun could put a victim in fear. *See Gray v. State,* 903 N.E.2d 940, 943–44 (Ind.2009).

Here, despite the lack of any testimony from Sharp that she surrendered her necklace and cash to Daniels because of fear, there is sufficient evidence from which the jury could have inferred that such fear existed. Daniels did display to Sharp that he had a gun in his possession before he suddenly grabbed the necklace and cash from her. Although not saying she was in fear, Sharp did admit during her testimony to being "a little shocked." Tr. p. 58. Police who arrived on the scene soon afterwards described Sharp as being "visibly shaking and upset." *Id.* at 125. There is sufficient evidence that Daniels accomplished his robbery of Sharp by placing her in fear.

## II. Intimidation

■ Next, we address Daniels's argument that there is insufficient evidence to support his conviction for Class C felony intimidation. Indiana Code Section 35–45–2–1 provides in part:

(a) A person who communicates a threat to another person, with the intent ...

(2) that the other person be placed in fear of retaliation for a prior lawful act ...

commits intimidation, a Class A misdemeanor.

(b) However, the offense is a ...

(2) Class C felony if, while committing it, the person draws or uses a deadly weapon....

Here, the State expressly alleged that Daniels "drew" a handgun on Sharp while he was threatening her about the battery charges she had caused to be filed against him; it did not allege that he "used" the handgun.[2] On appeal, the State concedes that Daniels, in fact, did not "draw" a weapon on Sharp when he lifted up his shirt to reveal the gun tucked into his waistband. *See Dunkle v. State*, 241 Ind. 548, 552–53, 173 N.E.2d 657, 659 (1961) (holding that "drawing" of weapon contemplates act by which a particular weapon is taken out of or removed for use from an enclosure).

■ The State argues that to the extent the information specifically alleged that Daniels "drew" a gun on Sharp, that allegation was mere surplusage. We disagree with this contention. Unnecessary surplusage in a charging document is descriptive material or allegations that are not essential to a charge and that may be entirely omitted without affecting the sufficiency of the charge. *Laney v. State*, 868 N.E.2d 561, 567 (Ind.Ct.App.2007), *trans. denied.* Here, an allegation that Daniels either "drew" or "used" a deadly weapon while intimidating Sharp was necessary to elevate the crime to a Class C felony. Additionally, it is erroneous for the State to suggest the charge could have been worded to provide merely that Daniels possessed or was armed with a deadly weapon while committing intimidation. Unlike, for example, the robbery charge in this case, merely being armed with a deadly weapon does not enhance the crime of intimidation; the weapon must be either drawn or used. *See Funk v. State*, 714 N.E.2d 746, 748–49 (Ind.Ct.App.1999) (holding it was erroneous, though not fundamentally so, for trial court and prosecutor to refer to non-existent crime of "intimidation while armed with a deadly weapon"), *trans. denied.*

■ The State alternatively argues that it proved Daniels "used" the gun while intimidating Sharp, and any variance between the charging information and the

---

**2.** Along with the issue regarding the robbery charge, this case highlights the importance of carefully drafting charging informations.

proof at trial was not fatal. A variance is an essential difference between the allegations of the charging document and the proof at trial. *Mitchem*, 685 N.E.2d at 677. Not all variances are fatal, however. *Id.*

The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:

"(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

(2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?"

*Id.* (quoting *Harrison v. State*, 507 N.E.2d 565, 566 (Ind.1987)).

Before resolving whether there was a fatal variance in this case, we must first answer whether there is in fact sufficient evidence Daniels "used" the gun while intimidating Sharp. Although it appears no Indiana cases have addressed what it means to "use" a weapon, it seems to be accepted that "[t]he word 'use,' in statutes prohibiting the use of a firearm in the commission of an offense, includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." 94 C.J.S. *Weapons* § 37 (2001) (citing *U.S. v. Ortiz de Jesus*, 230 F.3d 1, 5 (1st Cir.2000)). Clearly, Daniels "displayed" the gun to Sharp when he deliberately lifted up his shirt to reveal to her that it was tucked into his waistband. This would be sufficient evidence that he "used" the gun while intimidating her.

■ We also conclude that this variance between the charging information and the proof at trial is not fatal. We see no indication that Daniels was prejudiced in the preparation or maintenance of his defense by the variance. Daniels testified at trial and insisted that he did not show Sharp that he had a gun and did not threaten her in any way; in fact, he went so far as to testify that he did not have a gun on him on the day of the incident at all. No part of Daniels's defense centered on any distinction between "drawing" and "using" a gun. Additionally, the jury was expressly instructed, without objection from Daniels, that it could find him guilty of Class C felony intimidation if he "drew *or used* a deadly weapon." Tr. p. 232 (emphasis added). Daniels's acquiescence to this instruction is additional proof that he was not prejudiced by the variance between the charging information and proof at trial.

Furthermore, it is evident that Daniels is protected from facing a second prosecution for this act of intimidation. The State already has conceded that Daniels did not "draw" a gun on Sharp. Thus, there only is sufficient evidence that he "used" the gun. Even if the State filed a second information alleging that Daniels intimidated Sharp by "using" a gun, he already has been convicted of intimidation for "using" the gun. Double jeopardy principles clearly would prohibit a successive, second intimidation conviction for "using" the gun because such a conviction would require proof of the same conduct that supported his first conviction. *See Thomas v. State*, 764 N.E.2d 306, 311 (Ind.Ct.App.2002), *trans. denied.* Any variance between the charging information and proof at trial for the intimidation charge was not fatal.

## Conclusion

There is sufficient evidence to support Daniels's conviction for Class B felony robbery as charged. There also is sufficient evidence to support Daniels's conviction for Class C felony intimidation for "using"

a gun, and any variance between the charging information and proof at trial was not fatal. We affirm.

Affirmed.

ROBB, C.J., and BRADFORD, J., concur.