**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 20 2012, 9:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHAEL G. SHANLEY**
**PAUL J. PAGE**
Baker Pittman & Page
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DENNIS FECKER, JR., )
)
Appellant-Defendant, )
)
vs. ) No. 49A04-1109-CR-466
)
STATE OF INDIANA, )
)
Appellee-Plaintiff. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1004-FB-3380

**April 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Dennis Fecker, Jr., appeals his conviction for Class B felony sexual misconduct with a minor. We affirm.

## Issue

The sole restated issue before us is whether there is sufficient evidence to convict Fecker of sexual misconduct with a minor as alleged in the charging information.

## Facts

G.B. was born on July 20, 1994. On or around June 12 or 14, 2009, G.B. agreed to babysit Fecker's live-in girlfriend's children while he and his girlfriend went to a recurring pool tournament that was held on Wednesday nights.[1] Fecker was twenty-six years old at the time. Fecker picked G.B. up from her house and drove her to his house. G.B. ended up spending the night with her mother's permission, because Fecker and his girlfriend did not return from the pool tournament until late at night. G.B. told Fecker that she was going to be a freshman in high school in the fall and also told him that she was looking forward to her 15th birthday in July, which is an important birthday for girls of Mexican heritage such as G.B.

G.B. agreed to babysit for Fecker on a second occasion in June, which G.B. recalled to be the 24th. Fecker called G.B. about the arrangements to pick her up and also

---

[1] G.B. testified that she babysat for Fecker a total of three times, always on a Wednesday night. She could not always remember the precise dates, however. We take judicial notice of the fact that the Wednesdays in June 2009 fell on the 3rd, 10th, 17th, and 24th, and the first two in July were the 1st and 8th.

2

told her over the phone that she was pretty and asked her to email him some pictures of herself, which she declined to do. When Fecker came to pick G.B. up, he kissed her on the lips and told her that he had missed her. While driving to Fecker's house, he stopped at a gas station to get something to drink and kissed her in the car there; he also stopped at a second location a couple of blocks from his house and kissed her again before taking her to his house. G.B. again spent the night at Fecker's home.

At some point, Fecker and G.B. became friends on Myspace and communicated with each other through it. G.B. put a false date of birth of July 20, 1993, for her Myspace account so that she could join it.

G.B. agreed to babysit for Fecker on a third occasion, which G.B. and her mother believed to July 8, 2009. While on the phone making arrangements to pick G.B. up, Fecker told her that he considered her to be his girlfriend and that he was not getting along with his live-in girlfriend. Again after coming to pick G.B. up, Fecker kissed her at her home, at a gas station, and a couple of blocks from his house. Fecker also asked G.B. on this third occasion whether she was virgin, and she replied that she had only ever kissed.

Fecker and his girlfriend arrived home that night after midnight; G.B. was going to spend the night at the house as before. Fecker's girlfriend was extremely inebriated and he helped her upstairs. He then returned downstairs and sat on the couch next to G.B. Fecker lifted G.B.'s legs over his and began rubbing her legs. Finally, he placed his hand inside of her underwear and inserted his finger into her vagina. After doing so, Fecker

3

heard his girlfriend upstairs and went to check on her. When he returned, Fecker asked G.B. if he could "finish," and G.B. said no. Tr. p. 38. Fecker then went upstairs, and his girlfriend drove G.B. home the next morning. Fecker told G.B. to "swear to God" that he would not tell anyone what they had done together. Id. at 39. G.B. never babysat for Fecker again.

Eventually, in November or December of 2009, G.B. told her mother what Fecker had done to her. The next day, G.B. and her mother reported what had happened to police. On May 3, 2010, the State charged Fecker with one count of Class B felony sexual misconduct with a minor, for inserting his finger into her vagina, and two counts of Class C felony sexual misconduct with a minor, for allegedly fondling her. The information for all three counts alleged that the incidents occurred "On or about or between June 10, 2009 and July 8, 2009 . . . ." App. p. 14.

At Fecker's bench trial held on July 13, 2011, Fecker attacked the veracity of G.B. and her mother's testimony that the third and final time G.B. had babysat for Fecker was July 8, 2009. Fecker obtained records of emails sent between Fecker and G.B. through Myspace on the morning of July 8, 2009. At one point, Fecker told G.B. that "the babysitting thing worked its selfout [sic] anyway cause [Fecker's girlfriend] dont have to play anywho . . . ." Ex. C. Fecker construed this message to mean that G.B. did not have to babysit for Fecker on July 8, 2009. G.B., however, testified that she could not remember what the message meant. In any event, both she and her mother repeatedly

4

testified that the last time she babysat for Fecker was before her fifteenth birthday on July 20, 2009.

The trial court found Fecker not guilty of the two counts of Class C felony sexual misconduct with a minor but guilty of the Class B felony charge. Fecker now appeals.

**Analysis**

Fecker frames his challenge to his conviction as whether there is sufficient evidence to support his conviction. When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses, and respect the fact-finder's exclusive province to weigh conflicting evidence. Jackson v. State, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences therefrom that support the conviction. Id. We will affirm if the probative evidence and reasonable inferences from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

Beyond this general sufficiency argument, Fecker's claim is that there was a fatal variance between the charging information and the proof at trial regarding the date on which he committed Class B felony sexual misconduct with a minor. Generally, the State must prove all the material allegations in a charging information. Daniels v. State, 957 N.E.2d 1025, 1028 (Ind. Ct. App. 2011). "A variance is an essential difference between the allegations of the charging document and the proof at trial." Id. at 1030. Any such variance is not fatal to a conviction unless the defendant was misled by the variance in

the preparation and maintenance of his or her defense, resulting in prejudice, or if the defendant will not be protected against double jeopardy in a future criminal proceeding covering the same event, facts, and evidence. Id. (quoting Mitchem v. State, 685 N.E.2d 671, 676 (Ind. 1997)).

The general rule is that time is not of the essence when prosecuting sex crimes against children. See Barger v. State, 587 N.E.2d 1304, 1307 (Ind. 1992) (child molesting); Warren v. State, 701 N.E.2d 902, 907 (Ind. Ct. App. 1998) (sexual misconduct with a minor), trans. denied.[2] The exact date of the offense "becomes important only in limited circumstances, including the case where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." Barger, 587 N.E.2d at 1307.

Fecker essentially argues that despite the general rule that time is not of the essence in child molesting or sexual misconduct with a minor cases, because the State here did in fact list dates in the charging information, it was bound to proving the offense of which he was convicted occurred during the explicitly listed time frame. However, when time is not of the essence of a crime, the State is only required to prove that the offense occurred any time within the statutory period of limitations; the State is not required to prove the offense occurred on the precise date alleged in an information. Neff v. State, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009), trans. denied. In particular,

---

[2] Fecker suggests that Krebs v. State, 816 N.E.2d 469 (Ind. Ct. App. 2004), contravenes Barger, and argues that Barger "must be overturned to protect a Defendant's right to a fair trial." Appellant's Br. p. 9. In fact, we noted and followed Barger in Krebs. See id. at 473 n.9. Moreover, because Barger was decided by our supreme court, it is solely within that court's prerogative to overrule that decision.

"[w]hen an information alleges that an offense occurred 'on or about' a certain date, the State is not limited to presenting evidence of events that occurred on that particular date when time is not an element of the offense." Id.

Here, G.B. did not turn sixteen years old, the age at which she could have legally consented to sexual activity with Fecker, until July 20, 2010. With the alleged acts here occurring in June and July of 2009, G.B.'s age at the time of the offense did not fall near the dividing line between criminal liability and no criminal liability for Fecker. Thus, time was not of the essence of this offense. Additionally, the State alleged that the act of sexual misconduct leading to Fecker's conviction occurred "On or about or between June 10, 2009 and July 8, 2009 . . . ." App. p. 14 (emphasis added). As such, the State was not required to prove that the offense occurred no later than July 8, 2009, and it was free to present evidence that the crime occurred on a date other than July 8, 2009.[3]

In any event, G.B. and her mother both testified that the last time she babysat for Fecker, and on which occasion he placed his finger in her vagina, was on July 8, 2009. Fecker's attempt to question whether G.B. remembered the date accurately, based on an unclear Myspace email message Fecker sent to her that G.B. was unable to recall, was a matter for the factfinder to consider in weighing G.B. and her Mother's testimony. Regardless of the precise date, both G.B. and her Mother clearly testified that the last

---

[3] Indeed, although not argued by Fecker, it seems undisputed that even if G.B. and her mother's testimony is accepted regarding her last going to babysit on July 8, 2009, the offense here did not occur until after midnight, i.e., it would have occurred on July 9, 2009.

time G.B. babysat for Fecker was before G.B.'s fifteenth birthday on July 20, 2009. There was no variance between the charging information and the proof at trial.

Even if there was a variance, it could not be said to be fatal because Fecker cannot demonstrate how he was prejudicially misled by the dates alleged in the charging information. In his opening brief, Fecker only generically asserts that "Had different dates been alleged, Fecker may have asserted an alibi defense or other defense," without elaboration. Appellant's Br. p. 9. In his reply brief, Fecker contends that if the sexual misconduct here actually took place closer to G.B.'s fifteenth birthday, he might have been able to raise a defense that he reasonably believed she was sixteen, if the act occurred after July 20, 2009, because of G.B.'s misrepresentation on her Myspace account that her birthday was July 20, 1993. See Ind. Code § 35-42-4-9(c) (providing for defense to charge of sexual misconduct with a minor if defendant reasonably believed child was over sixteen years old). However, the State never attempted to present any evidence that any act of sexual misconduct occurred after July 20, 2009. Even if Fecker had presented a defense that he thought G.B. turned sixteen on July 20, 2009, all of the State's evidence would have been that he engaged in deviate sexual conduct with her when he would have thought she was fifteen, which would still make him liable for Class B felony sexual misconduct with a minor. See I.C. § 35-42-4-9(a)(1).

Fecker also contends that he could be subjected to double jeopardy if the State were to file another charging information alleging that he committed an act of sexual misconduct against G.B. on a date after June 8, 2009. We disagree. The test for whether

8

a variance is fatal for double jeopardy purposes is whether the defendant will be protected against double jeopardy in a future criminal proceeding covering the same event, facts, and evidence. See Daniels, 957 N.E.2d at 1028. We are confident that if the State filed an information such as Fecker fears, double jeopardy principles clearly would preclude another trial and conviction based on precisely the same evidence and facts as that presented in his first trial, namely, that Fecker digitally penetrated G.B.'s vagina for the first and only time when she was babysitting for him for the third time sometime in July, 2009, before her fifteenth birthday.

## Conclusion

There is sufficient evidence to support Fecker's conviction and there is no fatal variance between the charging information and proof at trial. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.