**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Apr 09 2013, 8:48 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARTIZE SEVION, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A04-1207-CR-384 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Judge
Cause No. 18C05-0908-FB-11

**April 9, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Martize Sevion appeals his convictions for two counts of Class B felony criminal confinement, two counts of Class C felony intimidation, and one count of Class D felony pointing a firearm, as well as the finding that he is an habitual offender. We affirm in part and reverse in part.

**Issues**

The issues before us are:

I.      whether the trial court properly granted Sevion permission to pursue this belated appeal;

II.     whether the trial court properly refused to rule on a pro se "Request for Treatment" that he filed or to sua sponte order an assessment of competency;

III.    whether his request for a early trial under Indiana Criminal Rule 4(B) was violated;

IV.     whether his multiple convictions for confinement, intimidation, and pointing a firearm violate double jeopardy protections;

V.      whether there was sufficient evidence to support his convictions;

VI.     whether the trial court properly entered judgments of conviction against him for two counts of Class B felony confinement and two counts of Class C felony intimidation; and

VII.    whether he waived his right to have a jury decide whether he is an habitual offender.

**Facts**

In Sevion's first appeal, we related the facts behind his convictions as follows:

In the summer of 2008, Bryan Carrier (Carrier) and Angela Brotherton (Brotherton) were addicted to drugs, including cocaine, methadone, and opiates. Brotherton had a bad back and began taking medication for the pain; gradually, both she and Carrier became drug users. They would usually purchase drugs from Sevion, Mustafa Sevion (Mustafa), who was Sevion's brother, and Charles Bruce, a.k.a. Booboo. When Brotherton got arrested for shoplifting, she agreed to buy drugs from Mustafa as an undercover informant for the police department. As a result of Brotherton's undercover work, law enforcement officers arrested Mustafa on September 24, 2008.

The following day, September 25, 2008, Carrier and Brotherton took their daily doses of methadone. At approximately 8 p.m. that day, Carrier, Brotherton, and Sevion got together at the Imperial Apartments on Mulberry Street, in Muncie, Indiana. Sevion, who was on the phone, met with Carrier, as Carrier drove up. Carrier could see Booboo, Marcel Sevion (Marcel), another of Sevion's brothers, and James Crawford (Crawford) standing around a makeshift campfire.

Sevion walked up to Carrier's truck and told him to get out of the car. Carrier and Sevion went in the alley, behind one of the apartment buildings. Sevion finished his phone call and told Carrier that he wanted to check him for a wire. Carrier lifted up his shirt. Seeing no wire, Sevion walked back to Carrier's truck to fetch Brotherton. As Sevion approached the truck, both Carrier and Brotherton noticed Sevion take something off the top of a blue car. Sevion told Brotherton, "[Carrier] wants you to come over here with us." Brotherton could see Carrier shake his head "no," but Brotherton nevertheless followed Sevion into the alley.

3

When Sevion stopped walking, he told them that he wanted to check them both for a wire and told them to take off their clothes. Brotherton asked why, to which Sevion replied "you know why." As Carrier became upset at Sevion forcing Brotherton to strip, Sevion showed them his semi-automatic handgun, pulling back the slide so a bullet fell out. Brotherton stripped down to her underpants and Carrier took off all his clothes.

Sevion told Brotherton and Carrier to follow him. Carrier demanded to know what Sevion was planning and whether he was going to kill them. Sevion instructed them to cooperate and to do as he ordered. Sevion led them out of the alley, back to the blue car. Booboo, Marcel, and Crawford gathered around them. Sevion ordered Carrier and Brotherton to get into the trunk of the car. When Brotherton asked why, Sevion told her that he was "going to take [her] out in the country and kill [her]." When Carrier started to get into the trunk, Brotherton took off running. At that point, Carrier also started running toward a nearby field.

Terrified to be shot in the back, Brotherton ran into a nearby apartment. Jerome Barnes (Barnes), the apartment's tenant, saw her run screaming into his apartment, clad only in her underpants, while he sat outside eating popcorn. Noticing Barnes' cell phone on the coffee table, Brotherton grabbed it and barricaded herself in the bathroom where she dialed 9–1–1. Barnes followed her into his apartment, and Sevion followed as well. As Brotherton was talking to the 9–1–1 operator, she could feel Sevion pushing against the bathroom door. Sevion managed to open the door, grabbed Brotherton by [her] hair and dragged her out, pointing a gun at her head. Barnes remained in his apartment.

Carrier was chased by Marcel. When Carrier was cornered against a fence, Marcel threatened to hit him and he lifted his shirt as if to indicate to Carrier that he was carrying a gun. Carrier was led back to the car where Booboo and Crawford were waiting. Carrier climbed into the trunk and the lid was closed. He managed to force the back seat down and stuck his head out. Booboo saw him and slammed the seat

4

back, catching Carrier's head between the seat and the car frame.

Outside Barnes' apartment, Booboo grabbed Brotherton's hair from Sevion and yanked her around. From the trunk, Carrier heard Brotherton screaming. He managed to find the emergency release and popped the trunk open. Carrier jumped out of the trunk and started running down Mulberry Street. As the men's attention focused on Carrier, Brotherton fled again. Booboo ran towards Carrier, wielding a beer bottle and hit Carrier directly above his right eye. As Carrier ran on, he encountered Muncie Police Officer Larry Ivy (Officer Ivy). Brotherton ran through the apartments again and also ran into Officer Ivy.

Sevion v. State, No. 18A05-1102-CR-125 (Ind. Ct. App. Nov. 29, 2011), trans. denied ("Sevion I").

On October 10, 2008, the State charged Sevion with Class B felony armed robbery, two counts of Class B felony criminal confinement, three counts of Class C felony intimidation, and two counts of Class D felony pointing a firearm, and also alleged that Sevion is an habitual offender. The State later dismissed the armed robbery charge. The confinement charges alleged that Sevion confined Carrier and Brotherton "without the other person's consent, said act being committed while armed with a deadly weapon contrary to the form of the statutes in such cases made and provided by I.C. 35-42-3-3(a)(1) . . . ." App. pp. 34-35.[1] The intimidation charges of which Sevion was convicted alleged that he communicated a threat to Carrier and Brotherton "with the intent that [they] engage in conduct against [their] will, to-wit: removing [their] clothing, said act

---

[1] This refers to the appendix compiled in Sevion's original appeal, which has been made a part of this appeal as well. A separate appendix was compiled for this appeal, which we will designate as "Belated App."

5

being committed while drawing or using a deadly weapon, contrary to the form of the statutes in such cases made and provided by I.C. 35-45-2-1(a)(1) . . . ." Id. at 38-39.

On October 24, 2008, at a time when it appears Sevion was unrepresented by counsel, he filed a pro se motion for a speedy bench trial. On November 11, 2008, the trial court appointed a public defender to represent Sevion. The trial court also scheduled a bench trial for December 29, 2008. At a pretrial conference held on December 17, 2008, Sevion withdrew his request for a speedy trial, over the State's objection, and the trial court vacated the December 29 trial date.

On August 20, 2009, Sevion filed a pro se "Motion for Request for Treatment." Id. at 12. The trial court ordered the motion to be stricken and did not rule on it. The motion itself was to be kept in the court's file, although it is not before this court on appeal. At a pretrial discussion held on November 23, 2010, the trial court discussed the motion with Sevion's attorney and indicated that "it was filed under 12-23-7-3 which is treatment in lieu of prosecution" and that the statute could not apply to Sevion's case. Tr. p. 133. Sevion's attorney agreed that the statute did not apply.

On November 30, 2010, the parties appeared for jury trial. However, Sevion indicated before jury selection that he wanted to waive his right to a jury trial and have a bench trial instead. Before accepting Sevion's waiver of his right to a jury trial, the trial court advised him in part as follows:

> [T]here is also the issue that there is a notice seeking a habitual offender count or alleging that you are a habitual offender. That would be applicable only if you are convicted

6

> of Count 3 of the charging information the way that that's been charged. Uh, and there would be a separate hearing that would follow the trial on that habitual offender count. Again, before the jury could find you guilty of being a habitual offender it would take a unanimous verdict of all twelve (12) members of the jury okay. Now by waiving your right to a jury trial, what you are indicating is that you are willing to forgo twelve (12) members of the jury determining in this case, whether the State has proved their case beyond a reasonable doubt on each count and that matter would be tried to me as the Judge . . . .

Id. at 148-49. After this and other advisements, Sevion affirmed that he was waiving his right to a jury trial.

At the conclusion of the bench trial on December 1, 2012, the trial court found Sevion guilty of two counts of Class B felony criminal confinement, two counts of Class C felony intimidation, and one count of Class D felony pointing a firearm, and also found that Sevion is an habitual offender; it found Sevion not guilty of one count of Class C felony intimidation and one count of Class D felony pointing a firearm. At Sevion's sentencing hearing on December 28, 2012, he personally expressed his concern that he could only be convicted of Class D felony confinement and Class A misdemeanor intimidation, based upon the statutory cites used by the State in the charging information. The trial court then sentenced Sevion to fifteen years for each confinement conviction, with those sentences served consecutively and one of them being enhanced by twenty years for the habitual offender finding, as well as concurrent sentences of six years for the intimidation convictions and two years for the pointing a firearm conviction. At the

7

conclusion of the sentencing hearing Sevion stated that he wished to appeal but that he did not want to be represented by counsel on appeal.

On December 29, 2012, Sevion filed a pro se "Motion to Correct Erroneous Sentence." App. p. 281. This motion reiterated Sevion's complaint at the sentencing hearing that he could only be convicted of Class D felony confinement and Class A misdemeanor intimidation. On February 16, 2011, the trial court denied Sevion's motion. On February 18, 2011, Sevion filed a pro se notice of appeal. After experiencing difficulty in filing defective materials with this court, on May 25, 2011, Sevion requested that the trial court appoint him appellate counsel, and it did so.

Sevion's brief raised precisely the issues that are raised in this appeal, with the exception that it did not allege he had been improperly denied his right to a jury trial on the habitual offender determination. On November 29, 2011, this court issued a memorandum decision in which we held in part:

> It is clear from [a motion to correct erroneous sentence's] very limited purpose that it cannot be used as a vehicle to circumvent the statutory time to appeal a final decision, nor does the motion toll the time to file a timely notice of appeal. An appeal from the denial of a motion to correct erroneous sentence is only an appeal from the trial court's decision with respect to the perceived erroneous sentence, and it cannot incorporate an appeal on the underlying merits of the conviction. Therefore, we conclude that Sevion's appellate claims addressing the merits of his conviction must be dismissed due to Sevion's untimely appeal.

Sevion I. With respect to the merits of the motion to correct erroneous sentence claim, we held that it required examination of proceedings before and during trial, which is

8

beyond the scope of a motion to correct erroneous sentence. Id. Thus, we affirmed the denial of the motion. Sevion filed a petition for transfer with the Indiana Supreme Court, and it denied the petition on May 4, 2012.

On July 5, 2012, Sevion filed a pro se motion for permission to file a belated appeal. On July 11, 2012, the trial court granted the motion without first conducting a hearing on the matter. On July 25, 2012, Sevion, by counsel, filed a belated notice of appeal, and the case is now before us accordingly.

**Analysis**

*I. Belated Appeal*

We first address the State's cross-appeal argument that the trial court erred in granting Sevion permission to pursue this belated appeal. Indiana Post-Conviction Rule 2(1)(a) provides:

> An eligible defendant convicted after a trial or plea of guilty may petition the trial court for permission to file a belated notice of appeal of the conviction or sentence if;
>
> (1)      the defendant failed to file a timely notice of appeal;
>
> (2)      the failure to file a timely notice of appeal was not due to the fault of the defendant; and
>
> (3)      the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

A decision whether to grant permission to file a belated notice of appeal is within the sound discretion of the trial court. Moshenek v. State, 868 N.E.2d 419, 422 (Ind. 2007).

A defendant must prove by a preponderance of the evidence that he or she was without fault in the delayed filing and was diligent in pursuing permission to file a belated motion to appeal. Id. at 422-23. Factors to consider in assessing a defendant's diligence and lack of fault include "'the defendant's level of awareness of his procedural remedy, age, education, familiarity with the legal system, whether the defendant was informed of his appellate rights, and whether he committed an act or omission which contributed to the delay.'" Id. at 423 (quoting Land v. State, 640 N.E.2d 106, 108 (Ind. Ct. App. 1994), trans. denied). A trial court's ruling regarding permission to file a belated notice of appeal will be affirmed unless it was based on an error of law or a clearly erroneous factual determination. Id. at 423-24. When a trial court does not conduct a hearing on the matter, however, we owe no deference to a trial court's factual determinations. Id. at 424.

Here, the trial court did not conduct a hearing on Sevion's belated appeal motion and, therefore, we need not defer to any factual findings it made. Still, we see no reason to disturb its decision granting Sevion permission to pursue a belated appeal. The trial court noted in its order that Sevion was under "the mistaken belief" that he could not file a notice of appeal "until after this Court ruled on his pending pro-se motion to correct erroneous sentence, which this Court believes to be excusable neglect and should not be considered the fault of the petitioner/defendant . . . ." Belated App. p. 44. We agree with this assessment. In our decision in Sevion I, we held that a motion to correct erroneous sentence does not toll the time for filing a notice of appeal, unlike a motion to correct

10

error under Indiana Trial Rule 59. We reached this conclusion after analyzing the "limited purpose" of a motion to correct erroneous sentence, as outlined by our supreme court in Robinson v. State, 805 N.E.2d 783 (Ind. 2004). However, there was no pre-existing case law differentiating a motion to correct erroneous sentence from a motion to correct error for purposes of tolling the time for filing a notice of appeal from a conviction, and indeed there is still no published case so holding. Under the circumstances, we decline to find Sevion at fault for not anticipating that a motion to correct erroneous sentence was different than a motion to correct error for purposes of tolling the time for initiating an appeal.

As for diligence, the State argues that Sevion "was sentenced on December 28, 2010, yet he would wait another year and a half before finally seeking to file a belated appeal." Appellee's Br. p. 18. That argument is somewhat misleading, because Sevion did file his motion to correct erroneous sentence on December 29, 2010, he filed his first notice of appeal two days after denial of that motion, and he filed for permission to pursue a belated appeal two months after our supreme court denied transfer in Sevion I. Taken together, Sevion's actions indicate that he has always attempted to act diligently in protecting his appellate rights, even if he initially went about it in the wrong way. We cannot say the trial court abused its discretion in granting Sevion permission to pursue this belated appeal.

## II. Competency

11

Sevion's first argument is that the trial court should have sua sponte ordered him to undergo a psychological examination to determine whether he was competent to stand trial. This argument is combined with Sevion's claim that the trial court erred in not ruling upon his pro se "Motion for Request for Treatment," which he essentially argues should have alerted the trial court to the possibility that he was incompetent.

Regarding the "Motion for Request for Treatment," this motion was filed while Sevion was represented by counsel. A trial court is not required to respond to motions and requests filed by a defendant who is represented by counsel. Underwood v. State, 722 N.E.2d 828, 832 (Ind. 2000). "To require the trial court to respond to both Defendant and counsel would effectively create a hybrid representation to which Defendant is not entitled." Id.

Here, the trial court struck Sevion's pro se filing, which was within its prerogative. It additionally noted that Sevion's motion requested drug and/or alcohol treatment in lieu of prosecution pursuant to Indiana Code Section 12-23-7-3. Indiana Code Section 12-23-7-1, however, states that treatment in lieu of prosecution may be ordered "if the individual is eligible to make the request for treatment provided for in IC 12-23-6 . . . ." As noted by the trial court, Sevion did not meet this requirement; Indiana Code Section 12-23-6-1(1) precludes treatment in lieu of prosecution if a defendant has been charged with "a forcible felony or burglary classified as a Class A or Class B felony." Sevion was charged with two counts of Class B felony criminal confinement, which surely meets the definition of a "forcible felony." See I.C. § 35-31.5-2-138 (defining "forcible felony" as

one "that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being").

As for whether Sevion's "Motion for Request for Treatment" should have nonetheless triggered an investigation into his competency to stand trial, the right to a competency hearing pursuant to Indiana Code Section 35-36-3-1 is not absolute. Campbell v. State, 732 N.E.2d 197, 202 (Ind. Ct. App. 2000). "Such a hearing is required only when a trial judge is confronted with evidence creating a reasonable or bona fide doubt as to a defendant's competency, which is defined as whether a defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him." Id. Whether reasonable grounds exist to order a competency evaluation is a decision that will be reversed only if the trial court has abused its discretion. Id. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. Gibbs v. State, 952 N.E.2d 214, 219 (Ind. Ct. App. 2011), trans. denied.

Aside from Sevion's "Motion for Request for Treatment," the only other evidence he directs us to as possible evidence of incompetency are a letter from his mother to the trial court in which she said Sevion and his brother Marcel "are not well in there [sic] minds," App. p. 100, a statement by Sevion during one pre-trial hearing that he had "been experiencing a lot of mental difficulties," Tr. p. 68, and a statement during a later hearing that he had expected trial counsel to file a motion to have his mental competency

13

evaluated but counsel had not done so. We cannot say this evidence required the trial court to sua sponte order a competency evaluation. As for the "Motion for Request for Treatment," Sevion makes no argument now that he should have been evaluated as a potential candidate for drug and/or alcohol treatment in lieu of prosecution—he only argues competency to stand trial, which is a different issue entirely. And as a general matter, a trial court's observations of a defendant in court are an adequate basis for determining whether a competency hearing is necessary, and we will not lightly disturb such a determination. Campbell, 732 N.E.2d at 202. Our review of Sevion's statements to the trial court during hearings and of his various pro se filings reveal a frequent frustration with his trial counsel and the justice system, but they give no indication of incompetency. All of his statements and filings are entirely coherent, though often not legally sound. They reflect a sound factual understanding of the proceedings and the ability to consult with counsel, even if Sevion frequently disagreed with counsel. The trial court likewise was not required to order a competency evaluation based on Sevion's mother's note; a trial court does not have to order a competency hearing based upon a layperson's unsupported belief that a defendant may be incompetent. See Campbell, 732 N.E.2d at 203. In viewing the entirety of the record, we cannot say the trial court abused its discretion by not sua sponte ordering an evaluation of Sevion's competency to stand trial.

### III. Early Trial Request

14

Next, Sevion argues that his right to an early trial was violated. On October 24, 2008, before he was appointed counsel, Sevion filed a pro se motion for an early trial within seventy days, as permitted by Indiana Criminal Rule 4(B). In accordance with this request, the trial court scheduled a trial for December 29, 2008. After Sevion was appointed counsel, Sevion withdrew his request for a speedy trial at a pretrial conference held on December 17, 2008, over the State's objection, and the trial court vacated the December 29 trial date.

A motion for an early trial under Criminal Rule 4(B) may be waived by a movant who does not maintain a position reasonably consistent with that request. Fletcher v. State, 959 N.E.2d 922, 925 (Ind. Ct. App. 2012), trans. denied. Sevion unequivocally withdrew his request for an early trial less than two months after he made it. He seems to be arguing that he was competent enough when he requested the early trial for that request to be honored, but he was not competent enough to withdraw that request. We already have resolved, however, that the trial court did not abuse its discretion in refusing to order a competency evaluation for Sevion. Sevion makes no other argument regarding the validity of his waiver of his right to a seventy-day early trial. Thus, we conclude he waived that right, and the trial court did not improperly refuse his Rule 4(B) motion.

### IV. Double Jeopardy

We now assess whether any of Sevion's convictions must be vacated due to double jeopardy concerns. Sevion bases his argument primarily upon Article 1, Section 14 of the Indiana Constitution. Under that provision, two offenses are the same in

15

violation of the Indiana Double Jeopardy Clause if "'with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.'" Spivey v. State, 761 N.E.2d 831, 832 (Ind. 2002) (quoting Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999)). A defendant claiming a violation of the actual evidence test must demonstrate a reasonable possibility that the evidentiary facts used by a fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second offense. Id. at 832-33. There is no double jeopardy violation if the evidence establishing the essential elements of one offense also establish one or even several, but not all, of the essential elements of a second offense. Id. at 833.[2]

We first note the general proposition that where a defendant harms or threatens harm to distinct victims, double jeopardy is not violated by multiple convictions. Bunch v. State, 937 N.E.2d 839, 847 (Ind. Ct. App. 2010), trans. denied. Thus, Sevion could be convicted of one count each of confinement and of intimidation based on the multiple victims harmed by Sevion's conduct, i.e. Carrier and Brotherton.

We further observe that in closing arguments, the prosecutor unequivocally and vigorously argued that there was one continuous period of confinement in this case lasting ten to fifteen minutes, beginning with when Carrier and Brotherton were first

---

[2] Sevion also cites Indiana Code Section 35-50-1-2(b) in support of his double jeopardy argument. That statutory provision, however, only applies to limit sentencing in certain cases involving a single "episode of criminal conduct." It has no application in considering whether multiple convictions violate double jeopardy. Sevion makes no argument that his sentence exceeds the bounds of Section 35-50-1-2(b).

16

approached by Sevion and ending only when they encountered Officer Ivy after fleeing from the scene. Argument of counsel is one crucial factor to consider when analyzing whether there is a reasonable possibility that a fact-finder relied on the same evidentiary facts to establish the commission of two separate offenses. Spivey, 761 N.E.2d at 832.

Sevion's act of intimidation towards Carrier and Sevion—forcing them to remove their clothing after he had displayed a firearm—did occur during this same time period in which the State argued that confinement was occurring. However, the evidence related to that threat—specifically the demand that Carrier and Sevion remove their clothes—went beyond what was necessary to prove confinement. As charged here, confinement occurs when a person knowingly or intentionally confines another person without his or her consent, and intimidation as charged requires proof that a person communicated a threat to another person with the intent that the other person engage in conduct against his or her will. See I.C. §§ 35-42-3-3(a)(1), 35-45-2-1(a)(1). In other words, the same evidence was not used to establish all of the essential elements of both confinement and intimidation.

We have more difficulty with respect to the conviction for pointing a firearm. Sevion allegedly pointed or displayed a firearm at several points during this incident: when demanding that Carrier and Brotherton remove their clothing, when dragging Brotherton out of the apartment she had run into, and after Brotherton had been brought back to the car and while Carrier was in the trunk. The evidence regarding this offense is inextricably intertwined with both of the intimidation convictions, as well as the

17

confinement conviction with respect to Brotherton. At closing argument the State made no attempt to distinguish an act of pointing a firearm that was separate from the acts of intimidation or confinement, and it appears Sevion accomplished the intimidation of both Carrier and Brotherton and the confinement of Carrier through use of the firearm. Under the circumstances, and especially given the manner in which the State argued this case to the trial court as fact-finder, there is a reasonable possibility the trial court relied on the same evidentiary facts to find Sevion committed pointing a firearm as well as the confinement of Brotherton, or the intimidation of both Carrier and Brotherton. As such, we direct that Sevion's conviction for pointing a firearm be vacated because of a double jeopardy violation.

## V. Sufficiency of the Evidence

Sevion also contends there is insufficient evidence to support his confinement and intimidation convictions.[3] When reviewing the sufficiency of the evidence to support a conviction, we examine only the probative evidence and reasonable inferences that support the judgment. Lock v. State, 971 N.E.2d 71, 74 (Ind. 2012). We neither assess witness credibility nor do we reweigh the evidence; those roles are reserved for the finder of fact, not appellate courts. Id. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

---

[3] Sevion also argues there is insufficient evidence to support his conviction for pointing a firearm as a Class D felony. Given our vacation of that conviction for double jeopardy reasons, we need not address that argument.

18

Sevion first argues there is insufficient evidence to support his conviction for Carrier's confinement. Sevion focuses primarily upon Carrier's confinement in the trunk of the car, noting that act was carried out by Marcel, Booboo, and Crawford while he was chasing Brotherton. Even if we were to assume without deciding that there was no other sufficient evidence of Carrier's confinement aside from his placement in the trunk, there is ample evidence to support the conclusion that Sevion was an accomplice in that act. The responsibility of a principal and an accomplice is identical, and one may be charged as a principal but convicted on proof that he or she aided another in the commission of a crime. Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006). Factors to consider in determining whether there is sufficient evidence of accomplice liability include: (1) presence at the scene of the crime; (2) companionship with another at the scene; (3) failure to oppose the crime; and (4) the defendant's course of conduct before, during, and after occurrence of the crime. Norvell v. State, 960 N.E.2d 165, 168 (Ind. Ct. App. 2011) (quoting Bruno v. State, 774 N.E.2d 880, 882 (Ind. 2002)), trans. denied.

Here, Sevion initially ordered both Carrier and Brotherton to get into the trunk of the car. When neither complied with that order and tried to run away, Sevion chased down Brotherton while Marcel chased down Carrier and brought him back to the car. After getting into the trunk, Carrier tried to escape through the back seat but was thwarted by Booboo. After Sevion captured Brotherton and brought her back to the car, he made no effort to free Carrier from the trunk, with Carrier freeing himself and escaping after he found the emergency trunk release handle. It is clear that Sevion was fully involved as an

19

accomplice in Carrier's confinement in the trunk. He gave the initial order that Carrier be confined in the trunk, which his companions Marcel and Booboo saw was carried out after Brotherton escaped. There is sufficient evidence to support Sevion's conviction for confining Carrier, even if we limit ourselves to looking only at his confinement in the trunk.

Sevion also argues there is insufficient evidence to support his conviction for confining Brotherton. He points out that the State specifically charged him with violating subsection (a)(1) of Indiana Code Section 35-42-3-3, which defines criminal confinement as knowingly or intentionally confining another person without the other person's consent, and not subsection (a)(2), which alternatively defines criminal confinement as removing another person from one place to another by fraud, enticement, force, or threat of force. Our supreme court has held that the State may not charge a defendant under subsection (a)(1) of the confinement statute but obtain a conviction based solely on proof of "removal" confinement under subsection (a)(2), or vice versa, because the two subsections state two different criminal offenses. Kelly v. State, 535 N.E.2d 140, 141-42 (Ind. 1989) (citing Addis v. State, 404 N.E.2d 59, 60-61 (Ind. Ct. App. 1980)); but see id. at 143-44 (Pivarnik & Givan, JJ., dissenting) (disagreeing with majority that confinement statute describes two different criminal acts and that "it would be more accurate to say the statute describes one criminal act that can be performed in two different manners.").

Thus, here for example, Sevion's forcible removal of Brotherton from Barnes's apartment would not be sufficient by itself to support his confinement conviction, given

the manner in which the State charged that crime. Instead, there must be evidence to support a finding that Sevion committed confinement of Brotherton under subsection (a)(1) at some point. "Confine" is statutorily defined as "to substantially interfere with the liberty of a person." I.C. § 35-42-3-1. Although it is somewhat difficult to pinpoint precisely when Brotherton's confinement began, there is certainly sufficient evidence that her liberty was substantially interfered with by Sevion. Brotherton testified that she did not feel free to leave the scene from the time she arrived at the Imperial Apartments complex until she ran away and found Officer Ivy. During that time, Sevion repeatedly displayed a weapon and, at times, ordered her to stay in a certain location, and other times forced her to move to a different location. Towards the end of the ordeal, Brotherton sat on the ground near the car while Sevion pointed his gun at her. That, in itself, was sufficient to establish confinement under (a)(1) and to sustain Sevion's conviction for confining Brotherton.

Finally, Sevion claims there is insufficient evidence to support both of his intimidation convictions. As charged, intimidation is the communication of a threat to another person with the intent that the other person engage in conduct against the other person's will. I.C. § 35-45-2-1(a)(1). "Threat" is defined as including "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person," or to "unlawfully subject a person to physical confinement or restrain," or to "commit a crime . . . ." I.C. § 35-45-2-1(c)(1), (2), & (3). He specifically contends there is insufficient evidence that he threatened either Carrier or Brotherton before they took

21

off their clothes. He argues that this case is similar to Gaddis v. State, 680 N.E.2d 860 (Ind. Ct. App. 1997). In that case, the driver of a vehicle displayed (but did not point) a handgun to the driver of another vehicle with whom he was having a traffic dispute. We reversed the defendant's intimidation conviction, stating that "under the intimidation statute the mere display of a handgun does not express an intention to unlawfully injure a person or his property." Gaddis, 680 N.E.2d at 862.

The State did not seek transfer in Gaddis, and our supreme court subsequently seemed to question the result of that case in Johnson v. State, 743 N.E.2d 755 (Ind. 2001). It agreed with the general proposition that merely displaying a handgun, standing alone, does not constitute a "threat" within the meaning of the intimidation statute. Johnson, 743 N.E.2d at 756. However, it went on to observe "that introducing a handgun into an emotionally charged environment can easily lead to a physical confrontation with tragic consequences." Id. Furthermore, the court held that when "the record shows the existence of words or conduct that are reasonably likely to incite confrontation, coupled with the display of a firearm, we are hard pressed to say that such facts are insufficient to prove that a threat has been communicated within the meaning of the intimidation statute." Id. at 756-57.

Here, Carrier and Brotherton initially refused Sevion's demand that they disrobe in the alley so that he could discern whether they were wearing an undercover wire. After that initial refusal, Sevion displayed his gun to Carrier and Brotherton, cocked it, and waved it back and forth between them. He did not verbally threaten Carrier and

22

Brotherton with physical harm, but did insist that they "cooperate and do as he said." Tr. p. 184. We believe this is precisely just a scenario envisioned by our supreme court in Johnson—an emotionally charged situation that was reasonably likely to incite confrontation, into which Sevion displayed, cocked, and directed a firearm towards the victims. Coupled with Sevion's insistence with that Carrier and Brotherton cooperate with his demand to disrobe, it is difficult to perceive Sevion's actions with the gun as anything other than a threat to cause them physical harm, confine them, or commit a crime if they did not cooperate. Sevion's actions constituted much more than a "mere display" of a firearm in a vacuum. There is sufficient evidence to support Sevion's intimidation convictions.

### VI. *Enhanced Convictions for Confinement and Intimidation*

Next, we address Sevion's claim that he could not be convicted of Class B felony confinement and Class C felony intimidation, based on the wording of the charging information. Sevion claims that, because of that wording, he can only be convicted of Class D felony confinement and Class A misdemeanor intimidation.

The charging information for confinement read in part with respect to both Carrier and Brotherton that Sevion "did, knowingly confine another person . . . without the other person's consent, said act being committed while armed with a deadly weapon contrary to the form of the statutes in such cases made and provided by I.C. 35-42-3-3(a)(1) . . . ." App. pp. 34-35. The charging information for intimidation read in part that Sevion:

23

> did, knowingly communicate a threat to another person . . . with the intent that Brotherton [and Carrier] engage in conduct against [their] will, to wit; removing [their] clothing, said act being committed while drawing or using a deadly weapon, contrary to the form of the statutes in such cases made and provided by I.C. 35-45-2-1(a)(1) . . . .

Id. at 38-39.

Sevion observes that the statutory cite in the confinement charge, I.C. § 35-42-3-3(a)(1), contains the "base" offense definition of confinement, which is a Class D felony. The Class B felony confinement enhancement for being armed with a deadly weapon is found in I.C. § 35-42-3-3(b)(2)(A). Similarly, the statutory cite in the intimidation charge, I.C. § 35-45-2-1(a)(1), contains the "base" offense definition of intimidation, which is a Class A misdemeanor. The Class C felony intimidation enhancement for drawing or using a deadly weapon is found in I.C. § 35-45-2-1(b)(2). Sevion argues that because of the specific statutory cites used in the charging information, he can only be convicted of the "base" offenses of confinement and intimidation.

Indiana Code Section 35-34-1-2 governs the drafting of charging informations and indictments. Subsection (a)(3) of the statute provides that an information:

> shall be in writing and allege the commission of an offense by . . . citing the statutory provision alleged to have been violated, except that any failure to include such a citation or any error in such a citation does not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against the defendant . . . .

24

We also note the general proposition that any variance between a charging document and the proof at trial is not fatal if the defendant was not misled in the preparation and maintenance of his or her defense and was not prejudiced. See Daniels v. State, 957 N.E.2d 1025, 1030 (Ind. Ct. App. 2011).

Here, there is no indication that the citations listed in the charging information somehow prejudiced Sevion or misled him into believing the State would not attempt to convict him of Class B felony confinement or Class C felony intimidation. The information plainly alleged that Sevion had committed confinement while armed with a deadly weapon, as required to elevate that offense to a Class B felony, and that he had committed intimidation while drawing or using a deadly weapon, as required to elevate that offense to a Class C felony. The information also listed the alleged offenses as Class B and C felonies, respectively. Even if the information did not list the specific citations for Class B felony confinement and Class C felony intimidation, in the absence of any prejudice to Sevion that is not a basis for reversal of his convictions or their reduction to a lesser class of offense.

### VII. Jury Trial Waiver

The final issue we address is whether Sevion properly waived his right to have a jury determine whether he is an habitual offender. The right to have a jury determine habitual offender status is based in statute. See I.C. § 35-50-2-8(f). However, both statutory and constitutional safeguards apply to waiver of a jury trial for an habitual offender finding. O'Connor v. State, 796 N.E.2d 1230, 1233 (Ind. Ct. App. 2003). To

25

constitute a valid waiver of the right to a jury trial, the waiver must be voluntarily, knowingly, and intelligently made with sufficient awareness of the relevant circumstances surrounding the waiver and its consequences. Id. The defendant must personally waive the right to jury trial in a manner that is apparent from the court's record, whether in the form of a written waiver of a colloquy in open court. Id. at 1234.

In O'Connor, we held that a jury trial waiver was ineffective with respect to a habitual offender determination where the State had not yet filed an habitual offender allegation at the time the defendant made the waiver. Id. at 1235. Here, by contrast, the State had filed an habitual offender allegation against Sevion prior to the time he waived his right to a jury trial. Moreover, as outlined earlier, the trial court engaged in an explicit colloquy with Sevion regarding waiver of that right, including advising Sevion that he had a right to have a jury determine his habitual offender status. It is also clear from the entire context of the colloquy that Sevion was well-advised that by waiving his right to a jury trial, he also was waiving his right to have a jury make the habitual offender determination. We conclude that Sevion voluntarily, knowingly, and intelligently waived his right to have a jury make the habitual offender determination.

### Conclusion

We cannot say the trial court abused its discretion in permitting Sevion to pursue this belated appeal. However, aside from reversing his conviction for Class D felony pointing a firearm based upon double jeopardy considerations, we affirm his convictions and sentence, including the habitual offender enhancement, in all respects.

26

Affirmed in part and reversed in part.

BAKER, J., and RILEY, J., concur.